## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EUGENE GELLER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| COTIVITI HOLDINGS, INC., DAVID L. SWIFT, JAMES E. PARISI, CHRISTOPHER PIKE, RUBE JOSE KING-SHAW, JR., R. HALSEY WISE, KENNETH R. GOULET, JOHN MALDONADO, J. DOUGLAS WILLIAMS, MALA ANAND, and ELIZABETH CONNOLLY ALEXANDER, | ) ) ) ) ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff Eugene Geller ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Cotiviti Holdings, Inc. ("Cotiviti" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Cotiviti, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between Cotiviti and Verscend Technologies, Inc., an affiliate of Veritas Capital (collectively, "Veritas").

2.      On June 19, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which each share of Cotiviti common stock will be exchanged for $44.75 in cash (the "Merger Consideration"), representing an enterprise value of approximately $4.9 billion.

3.      On July 23, 2018, in order to convince Cotiviti shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The date of the shareholder meeting is set for August 24, 2018.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy false and/or misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for the Company; (ii) the financial projections utilized by the Company's financial advisors; and (iii) the sale process leading up to the Proposed Merger.

6.      It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for contraventions of: (i) Rule 14a-9; and (ii) Regulation G, 17 C.F.R. § 244.100, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate

the Proposed Merger unless, and until, the material information discussed below is disclosed to Cotiviti shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Cotiviti is incorporated in this District.

## PARTIES

11.      Plaintiff is, and at all relevant times has been, a Cotiviti shareholder.

12.      Defendant Cotiviti is incorporated in Delaware and maintains its principal executive offices at 115 Perimeter Ctr. Place, The South Terraces, Suite 700, Atlanta, Georgia 30346.  The Company trades on the NYSE under the ticker symbol: "COTV".

13.      Individual Defendant David L. Swift has served as a director of the Company since November 2014 and is also an Executive Business Partner at Advent International Corporation

("Advent"), which owns approximately 44% of Cotiviti and has signed an agreement to vote those shares in favor of the Proposed Merger.

14.     Individual Defendant James E. Parisi has served as a director of the Company since May 2015.

15.     Individual Defendant Christopher Pike has served as a director of the Company since July 2012 and is currently a managing partner at Advent.

16.     Individual Defendant Rube Jose King-Shaw, Jr. has served as a director of the Company since August 2016.

17.     Individual Defendant R. Halsey Wise has served as a director of the Company since December 2017.

18.     Individual Defendant Kenneth R. Goulet has served as a director of the Company since December 2015.

19.     Individual Defendant John Maldonado has served as a director of the Company since July 2012 and is currently a managing partner at Advent.

20.     Individual Defendant J. Douglas Williams has served as the Company's Chief Executive Officer and a director since May 2014.

21.     Individual Defendant Mala Anand has served as a director of the Company since December 2016.

22.     Individual Defendant Elizabeth Connolly Alexander has served as a director of the Company since July 2012.

23.     The Individual Defendants and Cotiviti may collectively be referred to as "Defendants."  Each of the Individual Defendants herein is sued individually as well as in his or her capacity as an officer and/or trustee of the Company, and the liability of each arises from the

fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Cotiviti (the "Class").   Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

25.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of July 6, 2018, there were approximately 93,292,686 shares of Cotiviti common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of Cotiviti will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without a presentation and reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

iii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

26.     Cotiviti Holdings, Inc. provides payment processing services in the United States,

including claims management, clinical chart validation, optimization analysis, and other services.

27.     On June 19, 2018, the Company and Veritas jointly announced the Proposed

Merger in a press release which states, in pertinent part:

> **ATLANTA, GA, and WALTHAM, MA – June 19, 2018** - Cotiviti Holdings, Inc.
> (NYSE: COTV) ("Cotiviti"), a leading provider of payment accuracy and analytics-
> driven solutions focused primarily on the healthcare industry, and Verscend
> Technologies, Inc. ("Verscend"), a portfolio company of Veritas Capital
> ("Veritas") and a  leader in data-driven healthcare solutions, announced today that
> they have entered into a definitive agreement whereby Verscend has agreed to
> acquire Cotiviti for $4.9 billion in cash.
>
> Under the terms of the agreement, Cotiviti shareholders will receive $44.75 in cash
> per share of Cotiviti common stock, and Verscend will assume all of Cotiviti's
> outstanding debt, resulting in an enterprise value of approximately $4.9 billion. The
> offer price represents a 32% premium to Cotiviti's unaffected share price as of June
> 4, 2018 and a 136% premium to the initial public offering price of Cotiviti's
> common stock.
>
> The combined business will operate as a private healthcare information technology
> company with unique, data-driven capabilities.  Together, the companies are
> expected to have greater impact in the healthcare IT market by increasing
> affordability, reducing waste and improving outcomes and quality as well as offer
> new opportunities to create substantial value for clients, including complementary
> solutions across multiple intervention points in the payment process.
>
> "We are thrilled to partner with Cotiviti, which has become an important player in
> the growing and increasingly important and complex healthcare payment accuracy
> space," said Emad Rizk, M.D., President and CEO of Verscend.  "Together,
> Verscend and Cotiviti will offer our clients a comprehensive, integrated end-to-end
> solution to address the estimated $900 billion in healthcare waste and abuse across
> the claims payment and care continuum.  Financial data coupled with clinical data
> from our Risk Adjustment, Quality, and Population Health lines of business offer
> increased value to commercial payers, government entities, and providers."
>
> Doug Williams, CEO of Cotiviti said, "We expect today's transaction to deliver
> compelling value for Cotiviti shareholders and allow us to continue to execute our
> strategic growth plan.  We are excited to be combining with Verscend, and believe
> that together we will create an organization with robust data assets, expanded
> offerings and innovative technologies that will allow us to bring a broader portfolio

of new and existing payment accuracy analytical solutions to our valued customers."

"We believe Cotiviti is a perfect fit with both our investment strategy and with Verscend, and we look forward to taking the platform to the next level through this exciting combination," said Ramzi Musallam, CEO and Managing Partner of Veritas Capital. "The aggregation of Cotiviti and Verscend's complementary data sets and analytical capabilities, coupled with the unrelenting focus and commitment to support our customers, is expected to further drive value-added solutions and differentiated product development."

Veritas Capital has a proven track record of driving growth for companies within the Healthcare Technology IT space, as illustrated by the firm's recent acquisition of GE Healthcare's Value-Based Care Division and investments in Truven Health Analytics and Verscend Technologies. Veritas has a deep understanding of the urgent need to digitalize our healthcare system and brings a culture of intense customer focus and a drive for growth through focused R&D and product innovation.

**Transaction Details**

The transaction, which was unanimously approved by Cotiviti's Board of Directors, is expected to close during the fourth quarter of 2018. Closing of the transaction is subject to the approval of Cotiviti shareholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.

Advent International has entered into a voting agreement whereby it has agreed to vote shares representing approximately 44% of the Company's voting power in favor of the transaction.

28.     The Merger Consideration appears inadequate in light of the Company's current financial performance. Indeed, the Company reported 183% net income growth for fiscal year 2017 as compared to fiscal year 2016. Most recently, the Company reported 100% net income growth for the First Quarter 2018 as compared to the First Quarter 2017, and double-digit EBITDA growth.

29.     In sum, it appears that that the Merger Consideration fails to adequately compensate the Company's shareholders in exchange for the assets on the Company's balance sheet. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of

the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**The Materially Incomplete and Misleading Proxy**

30.     On July 23, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*The Materiality of Financial Projections*

31.     A company's financial projections are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the financial forecasts were relied on to approve the Merger Agreement and recommend the Proposed Merger to shareholders. The Proxy discloses that the financial projections above were prepared by the Company's management "[i]n connection with the Board's review of Cotiviti's strategic alternatives . . . ."  Proxy at 82.

32.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regard to financial information, companies are required to disclose "financial

information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K. *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

33.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items."  *Id.*

34.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

35.     As discussed further below, the financial projections here do not provide Cotiviti's

shareholders with a materially complete understanding of the assumptions and key factors, which shareholders would find material since the Board's recommendation that shareholders vote in favor of the Proposed Merger was based, in part, on the following:

> Best Alternative for Maximizing Stockholder Value. The Board considered that the Merger Consideration was more favorable to our stockholders than the potential value that might result from other alternatives reasonably available to Cotiviti, including the potential stockholder value based on our business plan that could be expected to be generated from remaining an independent public company, the possibility of being acquired by other companies, the possibility of acquisitions or mergers with other companies and other transactions, as well as the potential benefits, risks and uncertainties associated with such alternatives.

Proxy at 60.

### *The Financial Projections are Materially Incomplete*

36.     The Proxy discloses certain financial projections for the Company on pages 82-84. However, the Proxy fails to provide material information concerning the projections, which were developed by the Company's management and relied upon in recommending that shareholders vote in favor of the Proposed Merger.  Proxy at 82.

37.     Specifically, the Proxy provides values for non-GAAP measures: (1) Adjusted EBITDA and (2) Free Cash Flow, but fails to provide the line items used in their respective calculation or a reconciliation of these non-GAAP measures to their respective most comparable GAAP measures.  Proxy at 84.

38.     Compounding on the failure to disclose exactly how the non-GAAP metrics above were calculated, the Proxy is also materially misleading due to the inadequate disclosures surrounding both of the Company's financial advisors', Goldman Sachs & Co. LLC ("Goldman Sachs") and William Blair & Company, L.L.C. ("William Blair"), respective discounted cash flow ("DCF") analyses.  Proxy at 69; 78-79.

39.     More specifically, the Proxy discloses that both financial advisors relied on the

Company's financial projections, as provided by management.  Proxy at 69, 78.

40.     Nevertheless, Goldman Sachs' DCF analysis references the use of unlevered free cash flow, Proxy at 69, while William Blair's analysis references the use of free cash flows.  Proxy at 78-79.  It is unclear whether these metrics are one in the same, different from each other, or whether any adjustments were made to the disclosed "Free Cash Flow" projections disclosed on page 84.

41.     As a result of the Company's incomplete disclosures surrounding the calculation of UFCF by the financial advisors, the Proxy is materially misleading as shareholders are provided an incomplete and materially misleading understanding of the Company's future prospects, despite the information being readily available to the Company and the Company's acknowledgement that the forecasts, which contain non-GAAP financial measures, "should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and . . . may not be comparable to similarly titled measures used by other companies[,]" or as here, the Company's very own financial advisors.  Proxy at 83.

42.     As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

***The Financial Projections Violate Regulation G***

43.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. § 244.101(a)(1).

G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

44.    Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique, company-specific non-GAAP financial measures (as Cotiviti included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.   Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome

---

[2]    Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]    United States Securities and Exchange Commission, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (2002), *available at* https://www.sec.gov/rules/final/33-8176.htm (last visited June 27, 2018) ("SEC, *Final Rule*").

[4]    SEC, *Final Rule.*

[5]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures:  The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited June 27, 2018); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0  (last visited June 27, 2018).

practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

45.     Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

### The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9

46.     In addition to the Proxy's violation of Regulation G, the lack of reconciliation, or at the very least, the line items utilized in calculating the non-GAAP measures renders the financial projections disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.

47.     Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, Defendants acknowledge the misleading nature of non-GAAP projections, as Cotiviti shareholders are cautioned:

> Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by the Company may not be comparable to similarly titled measures used by other companies.

Proxy at 83.

---

[6]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

48.     As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 82-84, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

### *Material Omissions Concerning the Sale Process*

49.     The Proxy discloses that the Company entered into "customary confidentiality agreements" with several potential bidders.  Proxy at 50-53.  Despite not disclosing what the Company deemed to be "customary[,]" based on the Proxy's disclosure that "Party D would not agree to customary provisions of the confidentiality agreement, including a 'standstill' provision[,]" and that the Company and Party D did not continue discussions, Proxy at 50, it is reasonable to infer that the executed confidentiality agreements all contained "standstill" provisions.

50.     Although it appears that the Company entered into confidentiality agreements with at least seven potential bidders other than Veritas, the Proxy fails to disclose whether those other potential bidders are prevented from making a topping bid because the "standstill" provisions are still in effect.  Proxy at 50.  Moreover, it is unclear whether the confidentiality agreements contain "Don't Ask, Don't Waive" provisions, which would prevent the potential bidders from asking the Board to waive any "standstill" provisions.

51.     Without this information, the Company's shareholders are being misled by the Defendants' selective disclosures surrounding the confidentiality agreements, and thus are being misled regarding the adequacy of the sale process.

52.     Moreover, shareholders cannot determine whether the purported "fiduciary out" provision contained in the Merger Agreement, in fact, is merely illusory due to "Don't Ask, Don't Waive" provisions preventing potential bidders from actually making acquisition proposals.

53.     This information is clearly material to shareholders considering that the Board's recommendation is based in part on:

> Comprehensive Review Process. The Board considered the fact that the Board consisted of a majority of independent directors who unanimously approved the transaction following extensive discussions with Cotiviti's management team, representatives of financial advisers and outside legal counsel and a comprehensive strategic review and transaction process undertaken by the Board's Strategy Committee, and also took into consideration the financial expertise and prior industry experience held by a number of directors. In particular, the Board contacted or responded to inbound interest from the most feasible potential strategic and financial buyers (underscored by the fact that no new potential buyers came forward following news reports suggesting that the Company was engaged in a transaction process) and engaged in an extensive competitive transaction and due diligence process with multiple potential buyers.
>
> Ability to Respond to Acquisition Proposals. The Board considered the "fiduciary out" provisions of the Merger Agreement, which, subject to the terms and conditions thereof, permit Cotiviti to furnish information to and conduct negotiations with third parties that make Acquisition Proposals under certain circumstances, to change its recommendation to stockholders regarding the Merger Agreement and to terminate the Merger Agreement in order to approve a Superior Proposal, subject to payment of a termination fee in favor of Verscend. The Board further considered the fact that the $100.0 million termination fee (approximately 2.0% of the transaction value) payable by Cotiviti (i) is reasonable in light of the overall terms of the Merger Agreement and the benefits of the Merger and (ii) would not preclude another party from making a competing proposal.

Proxy at 61.

54.     This information is also material in light of the voting agreement entered into with Advent, which constitutes 44% of the Company's voting power.  In order to ensure that Advent did not improperly influence the Strategy Committee, shareholders would want to know whether interested and potential bidders are being prevented from submitting a topping bid.

55.     In sum, the Proxy independently violates: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.

56.     As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from Cotiviti shareholders.

57.     Absent disclosure of the foregoing material information prior to the special shareholder meeting, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and 17 C.F.R. § 244.100 Promulgated Thereunder)**

58.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any [Proxy] or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

60.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable"

GAAP measure.  17 C.F.R. § 244.100(a).

61.     The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder)**

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in Proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9.

64.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*."  17 C.F.R. § 244.100(b) (emphasis added).

65.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

66.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants,

by virtue of their roles as directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

67.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

68.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

69.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a Proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

70.     Cotiviti is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

71.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

72.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

73.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

74.     The Individual Defendants acted as controlling persons of Cotiviti within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Cotiviti, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

75.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

76.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing the Proxy.

77. In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

78. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

79. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

80. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying

Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  July 27, 2018

Respectfully submitted,

**FARUQI & FARUQI, LLP**

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com


*Counsel for Plaintiff*

By: */s/ Michael Van Gorder*
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*